**EXHIBIT 2**

County of San Bernardino
PROBATION DEPARTMENT
IDENTIFICATION
AUG 14 1990

RECEIVED

Defendant's Full Name: SIMMONS, MICHAEL ANTHONY    Alias:
Birth Place: Bellflower, California    Birth Date: 01-24-68    Age: 22    Sex: Male
Height: 5'11"    Weight: 160    Eyes: Blue    Hair: Blonde    Ethnic Group: Caucasian    Nationality: American
BI No. A08729730    FBI No. Not available    SS No. 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    Op. License No. A4268187
Scars/Marks/Tattoos: _____

## COURT INFORMATION

Court No. VCR-4656    Probation No. 0012940    Hearing Date: August 20, 1990
Original Charge: P.C. 187(a)
Convicted Charge: P.C. 187(a), Second Degree
Arresting Agency: Adelanto Police Department    Arrest Date: 5-28-89/6-29-90
Booking Agency: San Bernardino County Sheriff's Office    Booking No. 9006070683
Release Date: In custody    Bond ___ OR ___ Total Time in Custody: 53 days
Guilty by: Jury    Date: 06-29-90    In: Desert District Superior Court
Court: Desert Dist. Superior    Department: II    Judge: Paul Bryant
Codefendants and Dispositions: None
Defendant's Attorney: Public Defender    Address: 14455 Civic Dr., Victorville    Phone: 243-8701

## DEFENDANT'S ENVIRONMENT AND PERSONAL HISTORY
(Based on defendant's statement. Not independently verified by Probation Department.)

Address at Time of Offense: 18068 Casaba #2, Adelanto, California    Zip: 92301    Phone: N/P
Living With (Name/Relationship): Corrina Mills, Common-law-wife
Present Address: San Bernardino County Jail    Zip: ___    Phone: ___
Living With (Name/Relationship): ___
Auto Make: Chevrolet Nova    Year: 1970    Color: Brown    License No. Not available
Last School Attended: Antelope Valley High School    Highest Grade Completed: 10th
Age Left School: 17    Special Training: None
Military Branch: None    From: n/a    To: n/a    Type of Discharge: n/a    Verified: n/a
Employer: Collins Construction    Address: Palmdale
Type of Work: Labor    Date Left: 06-29-90    Reason: Guilty verdict    Time on Job: 12 months
Income-Gross ___ Net: $8/hr.    Spouse's Income ___    Other ___
Assets: None
Debts/Child Support: None
Health: Asthma/Bronchitis    Hobbies: Mechanical
Narcotics/Alcohol/Medications: Denies drugs, occasional use
Present Spouse: None    Age ___
Address: n/a    Date/Place of Marriage: n/a
Children (No.): 2    From Age: 3    To Age: 6    Amanda, Michael
Previous Marriage (Name): None    How/Date/Place/Terminated: n/a
Father: John Simmons Sr.    Age: 41    Occupation: Mechanic    Phone: N/P
Address: Not available
Mother: Gail Simmons    Age: 41    Occupation: Housewife    Phone: N/P
Address: Not available
Siblings (No.): 2    From Age: 19    To Age: 23    Probation/Parole Status: No
Name/Address/Phone No. of Nearest Relative/Friend: Tina Miles, mother-in-law (common-law) 1-805-264-0731

14-15842-425

VCR-4656   SIMMONS, MICHAEL ANTHONY   -1-                    August 20, 1990

<u>CIRCUMSTANCES OF THE OFFENSE:</u>            On May 28, 1989, Sgt. Gundersen, of the Adelanto Police Department, responded to a report of shots being fired at 18608 Casaba, Apartment #2, Adelanto. When Sgt. Gundersen arrived at the apartment, he saw Christopher Cothren and the defendant, Michael Simmons, near the front door of the apartment. Both individuals were highly upset and punching either the outside of the wall or a partially dismantled green Chevrolet Nova. Upon exiting his unit, he asked both subjects what happened and Mr. Simmons yelled spontaneously, "I shot her. Lord, I shot her." Mr. Cothren then said, "She's lying in the garage" referring to the victim, Corrina Mills. Sgt. Gundersen entered the apartment through the front door and then proceeded to the garage area and found Ms. Mills lying partially on her right side with her face turned up. He immediately observed what appeared to be a large caliber gunshot wound to her face and it was a considerable amount of blood on the floor next to her.

When Mr. Cothren was questioned further, he told Sgt. Gundersen Ms. Mills and Mr. Simmons had been arguing the night before about Mr. Simmons not working and spending too much time on his vehicle. Mr. Cothren said their children came over to his home about 10:00 a.m. and said their mother and father needed some help. Thus, Mr. Cothren went over to the home and found them arguing so he physically separated them. While he was talking with Mr. Simmons in the living room, Ms. Mills went in the garage and apparently started dumping things over. It was then that Mr. Simmons got upset and said, "My God, there's a gun in the drawer." Mr. Simmons then ran into the garage and started pulling the gun out of the drawer and Ms. Mills was shot when the gun fired.

Mr. Simmons told Sgt. Gundersen he and Ms. Mills had been arguing extensively the night before over his use of crack cocaine and no employment. To aggravate the situation, they had no money to pay the rent and all the bills were due.

Just prior to the shooting, Mr. Simmons said Ms. Mills was going in and out of the garage destroying his personal items. She proceeded to go through the drawers and pull everything out. From the way he described it, Ms. Mills was attempting to "trash" everything he had. He realized the pistol was in one of the drawers and it was loaded. When he attempted to block a blow from Ms. Mills, the gun fired into her face. In

VCR-4656  SIMMONS, MICHAEL ANTHONY    -2-                     August 20, 1990

order for the gun to fire, the hammer had to be cocked and Mr. Simmons said it was his intention to unload it right then and there. He figures he pulled the hammer too far back during the course of the argument without realizing. He claimed the gun had a very light trigger which would make it go off easily when jarred.

PLEA BARGAIN:    Mr. Simmons was charged with one count of Murder, P.C. 187(a). On June 12, 1990, Mr. Simmons was found guilty by jury of Murder in the Second Degree.

DEFENDANT'S STATEMENT:    Mr. Simmons told the Probation Officer the fight with Ms. Mills started early in the morning on the day of her death. She was quite upset over his lack of employment and his use of cocaine the night before. She determined he was using drugs when she found his cutting mirror in the apartment. Just before her death, the atmosphere in the apartment was quite tense. They had been fighting verbally and he had a mark on his back where she hit him with an electrical cord. The fighting continued when Ms. Mills went into the garage and started smashing his property. Ms. Mills found the gun and was upset it was in a drawer loaded to where the kids could have access to it. He had the gun in his hand and was attempting to unload it, upon her demand, when she attempted to hit him. He tried to block her blow with the hand which held the pistol and when he did, it went off hitting her in the face.

Mr. Simmons acknowledged he was offered a Voluntary Manslaughter on this matter but decided to go to jury trial because he felt he did not do anything wrong. He now feels his familiarity with weapons and the number of weapons in the home probably aided the jury in his conviction. Mr. Simmons still contends Ms. Mill's death was an accident. He knew her since she was twelve years of age, dated previously and lived together for six straight years. During that period of time, Ms. Mills was known to have a temper and they were constantly involved in arguments. It was not uncommon for him to leave the home during these arguments and go to the home of her mother. Mr. Simmons vehemently denies any type of emotional relationship between him and Ms. Mills' mother. It is simply that her mother understood her daughter's temper and knew about all the prior arguments.

TIME IN CUSTODY:    Mr. Simmons has been in custody a total of fifty-three (53) days. He was arrested on May 28, 1989, and released on June 2, 1989. He was taken into custody once again after the jury conviction

VCR-4656  SIMMONS, MICHAEL ANTHONY   -3-                    August 20, 1990

on June 29, 1990, and remains in custody as of August 20, 1990.

VICTIM'S STATEMENT:                          Ms. Tina Mills, mother of the victim, told the Probation Officer she believes the death of her daughter was nothing more than an accident. She figured the most the jury could hold Mr. Simmons responsible for would have been a conviction of Involuntary Manslaughter. Although she was barred from the trial because she was a witness, her own mother and father attended the complete trial and reached a conclusion in their own mind the shooting was an accident. Her father had his own questions about what really happened so he simply decided to listen to the trial and make up his mind after hearing the evidence. Her father told her he was certain the jury would come back with a not guilty verdict. Ms. Mills said her daughter had a real problem with her temper and she simply was out of control when she got mad. She was in their home on a number of occasions when her daughter was quite angry and Mr. Simmons would simply leave the house and go home with her to let her daughter sort of cool off. Ms. Mills angrily denies the accusation by the prosecution that she and Mr. Simmons were having an affair. There is absolutely no truth to this and believes the prosecution was being vindictive towards her.

COLLATERAL REPORTS:                          The Probation Officer has no letter of character references for Mr. Simmons. The only name of an individual Mr. Simmons provided concerning his character was Ms. Tina Mills, mother of the victim.

SENTENCING CONSIDERATIONS:

    Criteria Affecting Probation (Rule 414):    Mr. Simmons is not eligible for a grant of probation. He was found guilty by jury of Murder in the Second Degree which has a mandatory prison sentence of fifteen years to life.

ANALYSIS:                                    The penalty for Mr. Simmons has been set by law. Despite his belief (which is also shared by his mother-in-law), Ms. Mills' death was an accident, the jury concluded otherwise and Mr. Simmons must now spend a considerable amount of his time in custody for the death of Ms. Mills.

    From all the information available to the Probation Officer, Mr. Simmons and Ms. Mills obviously had a volatile relationship which they should have taken steps to correct a longtime ago. Regardless who was at fault in their arguments, such behavior such as hitting and destruction of each other's property was childish. Their volatile

VCR-4656   SIMMONS, MICHAEL ANTHONY    -4-                      August 20, 1990

behavior combined with a number of loaded weapons in the home was surely increasing a chances of someone getting hurt. As it now stands, the worse scenario occurred. Although Mr. Simmons must now pay for his offense, the Probation Officer does not see him as a future threat to society or criminally oriented. Hopefully, he will be able to function adequately whenever he is paroled.

<u>CVC RECOMMENDATION:</u>                 It is therefore respectfully recommended the Court find a motor vehicle was not involved in the commission of the offense.

<u>REIMBURSEMENT OF APPOINTED COUNSEL:</u>   It is respectfully recommended that the Court find that Mr. Simmons does not have the present ability to pay appointed counsel fees.

<u>REIMBURSEMENT OF INVESTIGATION COSTS:</u>   It is respectfully recommended that the Court find that Mr. Simmons does not have the present ability to pay the cost of conducting the Presentence Investigation and preparing the report pursuant to Section 1203.1b of the Penal Code.

VCR-4656  SIMMONS, MICHAEL ANTHONY    -5-                August 20, 1990

RESTITUTION FINE:           It is respectfully recommended that the defendant, Michael Anthony Simmons, be ordered to pay a Restitution Fine in the amount of $10,000.00, plus a ten percent (10%) fee of $1,000.00 pursuant to Government Code Section 13967(d) for the administrative cost of processing the account, for the offense of Second Degree Murder, P.C. 187(a), Felony.

PROBATION OFFICER'S RECOMMENDATION:     It is therefore respectfully recommended probation be denied and the defendant, Michael Anthony Simmons, be sentenced to the California State Prison for the term of fifteen (15) years to life for the offense of Murder in the Second Degree, in violation of Section 187(a) of the Penal Code, a Felony.

The commitment to State Prison is for a total of fifteen (15) years to life with credit for time served, a matter of seventy-nine (79) days (fifty-three (53) actual plus twenty-six (26) good/work time), which may be followed by parole for a period of seven (7) years to life.

                                        Respectfully submitted,

                                        BARBARA J. FRANK
                                        CHIEF COUNTY PROBATION OFFICER

                                        By: _____ for
                                        James H. Algoe
                                        Probation Officer III

JHA:sh                                  APPROVED:

                                        _____
                                        Alan J. Hutton
                                        Supervising Probation Officer

I hereby certify that the Probation Officer's Report and Recommendation in this matter has been read and considered by me on this ___ day of _____, 19__.

                                        _____
                                        Judge of the Desert District Superior Court,
                                        In and for the County of San Bernardino,
                                        State of California