# EXHIBIT 3

NOT FOR PUBLICATION

COURT OF APPEAL, FOURTH DISTRICT

DIVISION TWO

STATE OF CALIFORNIA

F I L E D
APR 16 1992
COURT OF APPEAL FOURTH DISTRICT

PEOPLE OF THE STATE OF CALIFORNIA, )
                                   )
        Plaintiff and Respondent,  )        E008614
                                   )
    v.                             )        (Super.Ct.No. VCR 4656)
                                   )
MICHAEL ANTHONY SIMMONS,           )
                                   )        O P I N I O N
        Defendant and Appellant.   )
_____)


        APPEAL from the Superior Court of San Bernardino County.

Paul M. Bryant, Jr., Judge.   Affirmed.

        Robert E. Boyce and Tamara L. Cross, under appointments by

the Court of Appeal, for Defendant and Appellant.

        Daniel E. Lungren, Attorney General, George Williamson,

Chief Assistant Attorney General, Harley D. Mayfield, Senior

Assistant Attorney General, Rudolf Corona, Jr., Supervising

Deputy Attorney General, and William M. Wood, Deputy Attorney

General, for Plaintiff and Respondent.

        Defendant was convicted by a jury of second degree murder in

violation of Penal Code section 187.[1/]  On appeal defendant

alleges that the trial court erred by admitting evidence

concerning the presence of other weapons, aside from the murder

_____

[1/]    All further statutory references are to the Penal Code
unless otherwise indicated.

-1-

weapon, belonging to defendant in the house and further asserts instructional error.  We find no prejudicial error and affirm.

### FACTS

The events which led to the death of Corrina Mills consumed Friday and Saturday, culminating in the fatal shot Sunday morning.  Defendant, the live-in boyfriend of the victim for a period of seven years, was a carpenter.  His car was broken so he could not go to work on the Friday preceding the homicide.  With the help of a neighbor, Chris Cothren, defendant began working on his car in order to get it running to get to work on Monday.  The victim was angry that defendant was unable to go to work. Defendant worked on the car all Friday night.  On Saturday, the car still not working, defendant continued to attempt to repair the car with Cothren's help.  On several different occasions, the victim came out and yelled at the defendant for not spending enough time with her and the children.[2]  The next morning, Cothren saw defendant and asked him if he was ready to work on the car.  Defendant indicated that he wasn't ready, "She's still pissed."  Cothren also observed that when Corrina got mad, no one could slow her down, that she had a bad temper.

Later that morning, the children came over to Cothren's residence and told him that their parents needed him.  When he arrived he found Corrina in an agitated state on the floor.  When he tried to help her, she hit him.  Corrina was angry and upset

---

[2]    Two children lived in the home.  The oldest, a girl, was being raised by defendant and Corrina although defendant was not the girl's biological father.  The boy, then 14 months old, was the natural son of defendant and Corrina.

and was throwing things.[3/]  She went into the garage and called

for defendant.  Cothren followed but retreated after the victim

threw something his direction.  Cothren then heard a loud bang.

When he went into the garage, he found the victim on the floor

and defendant standing with a gun to his head.  He kicked the

weapon from defendant's hand.  Immediately before the shooting, a

14-year-old babysitter across the street heard a man's voice yell

he was "going to kill the fucking bitch."  She heard a gunshot

about 30 seconds later.  After the gunshot, the witness observed

the defendant running around the front of the duplex yelling, "I

killed her.  She's dead."

Sergeant Gundersen of the Adelanto Police responded to the

911 call.  He recovered the murder weapon, a .44-caliber Magnum

revolver which was fully loaded except for one spent cartridge.

A search of the interior of the home produced a loaded .12-gauge

shotgun, an unloaded AR-15 rifle and a loaded .30-.30 caliber

rifle.  An autopsy was performed on the victim and it was

determined that the cause of death was a gunshot wound to the

face which passed through the victim's brain on an almost

straight-line trajectory.  The weapon was fired from a distance

of between four to eight inches from the victim's face.  A

weapons expert testified that the .44-caliber Magnum was a

single-action revolver.  Single-action weapons must first be

cocked before firing.  The weapon has four hammer positions, the

third position is the loading position, the fourth is the firing

---

[3/]    Part of the dispute centered around the fact that Corrina
had discovered evidence in the garage earlier that defendant,
despite promises to the contrary, was continuing his use of
methamphetamine.

position.  The weapon cannot be fired from the hammer-loading
position nor can it be loaded from the hammer-firing position.
The trigger pull on the weapon was 2.5 pounds, within the normal
range of trigger pulls for single-action weapons which is three-
fourths of a pound to eight pounds.

1.    Defense.

      Defendant's testimony supported his theory that the shooting
was an accident.  He recounted the argument before the shooting
claiming that after arguing in the living room, the victim went
into the garage and started to throw things.  She called him into
the garage to yell at him for leaving a loaded pistol in a desk
in the garage.  As defendant was unloading the gun, he testified
that the victim made a motion as if to strike him, he flinched
and the gun went off.

                           DISCUSSION

1.    Admissibility of Evidence Concerning the Existence of Other
      Weapons in the Residence.

      Defendant contends the trial court erred in the admission of
evidence concerning other weapons in the home.  He bases his
contention on his assertion that the evidence was not relevant
nor did the court exercise its discretion under Evidence Code
section 352.  We deal with each contention in turn.

      Section 351 provides, "Except as otherwise provided by
statute, all relevant evidence is admissible."  "'Relevant
evidence' means evidence, including evidence relevant to the
credibility of a witness or hearsay declarant, having any
tendency in reason to prove or disprove any disputed fact that is
of consequence to the determination of the action."  (Evid. Code,

                             -4-

§ 210.)  In our review of this issue, the appropriate standard of review is abuse of discretion.  (People v. Gordon (1990) 50 Cal.3d 1223, 1239.)  The trial court is vested with wide discretion in determining relevancy under the stated standard.  (People v. Jackson (1989) 49 Cal.3d 1170, 1187.)

In this case, the defendant claimed the gun discharged while he was attempting to unload it after having been given the weapon by his girlfriend.  He claimed that he "flinched" which caused the weapon to fire.  We agree with the trial court that the existence of other loaded weapons in the residence, whether they were pistols or rifles, does shed at least some light on defendant's general experience and knowledge of firearms.  It is clear, for instance, that all of the weapons were different models and types from which the trier of fact could reasonably draw an inference that defendant had some sophistication in the loading and unloading of firearms.  Viewing the evidence from that standpoint, the evidence has relevance with respect to the credibility of defendant's claim that he was having trouble unloading the weapon.  Thus, we find no abuse of discretion in allowing the prosecution to present evidence of the existence of other weapons in the residence.

Defendant next contends that the court failed to exercise its discretion under Evidence Code section 352.  We agree.  Here, the record is silent as to whether the court engaged in the required process of weighing potential prejudice to the defendant as opposed to the probative value of the evidence to the trier of fact.  In People v. Lankford (1989) 210 Cal.App.3d 227, 241, the court observed, "[a]ppellate courts have repeatedly said that

-5-

trial courts must discharge that [weighing] duty on the record so
that appellate courts have 'the record necessary for meaningful
review of any ensuing claim of abuse of discretion; an additional
reason is . . . to "promote judicial deliberation before judicial
action" [citation].'"

Because we are unable to evaluate the process used in the
evaluation of prejudice as opposed to probative value, we analyze
the introduction of the evidence concerning the existence of
other weapons in the house as error, that is, we shall assume
that the probative value was outweighed by the prejudice to the
defendant. We find, even assuming error, no prejudicial error
requiring reversal. Candidly, the issue of other weapons played
almost no role in the totality of the evidence presented against
defendant. Defendant himself admitted familiarity with <u>the</u>
weapon in question having fired it several days before the
shooting. Simply put, the issue before the jury was whether the
shooting was an accident as defendant claimed. The jury
obviously concluded that defendant's version of the incident was
not to be believed and found from the other evidence that the
shooting was other than accidental. Any error in admitting the
evidence was clearly harmless under the standard set forth in
<u>People</u> v. <u>Watson</u> (1956) 46 Cal.2d 818.

2.    <u>Failure to Give "Pinpoint" Instructions.</u>

Defendant next contends the trial court erred by failing to
include his two pinpoint instructions. The first of these
instructions dealt with the lesser included offense of
involuntary manslaughter, the second dealt with the lesser

included offense of voluntary manslaughter.[4]  In People v. Sears
(1970) 2 Cal.3d 180, 190, the court held, "[a] defendant is
entitled to an instruction relating particular facts to any legal
issue."  Our review of the proposed instructions suggests that
the court erred in failing to give them.  The instructions were
not overly long and were not argumentative.  (People v. Guzman
(1975) 47 Cal.App.3d 380, 386-387.)  The instructions requested
here pinpoint the theory of defendant's case and are therefore
appropriate.  (People v. Wright (1988) 45 Cal.3d 1126, 1137.)

     We find the error to be harmless.  Defendant suggests in his
opening brief, without any citation to authority, that the error
has deprived defendant of his federal constitutional rights under
the Sixth and Fourteenth Amendments.  We suspect that defendant
urges the necessity of determining harmless error "beyond a
reasonable doubt."  (Chapman v. California (1967) 386 U.S. 18;
Rose v. Clark (1986) 478 U.S. 570.)  Here, the issues raised in
the proposed instructions were resolved under other proper
instructions.  (People v. Garcia (1984) 36 Cal.3d 539, 554,
overruled on other grounds in People v. Lee (1987) 43 Cal.3d 666,
676.)  Thus, we find that there is no reasonable probability that

---

[4]    The proffered instructions were:
     "Manslaughter (Involuntary; Negligent Handling of Firearms)
[¶] . . . (A) killing resulting from the negligent handling of
firearms may be manslaughter.
     ". . . . . . . . . . . . . . . . . . . . . . . .
     "Manslaughter (Heat of Passion In Voluntary Manslaughter May
Be Supported By Verbal Provocation) [¶] 'To satisfy the objective
or "reasonable person" element of . . . voluntary manslaughter,
the accused's heat of passion must be due to "sufficient
provocation" . . . "(T)here is no specific type of provocation
required . . . (V)erbal provocation may be sufficient."'"

any result more favorable to defendant would be reached.   (<u>People</u>
v. <u>Watson</u>, <u>supra</u>, 46 Cal.2d 818, 836.)

<u>DISPOSITION</u>

The judgment is affirmed.

<u>NOT FOR PUBLICATION</u>

<u>HOLLENHORST</u>

Acting P.J.

We concur:

<u>TIMLIN</u>

        J.

<u>McKINSTER</u>

        J.