# EXHIBIT 5

Name  Michael Simmons

Address  P.O. Box 689

Soledad, CA 93960-0689

CDC or ID Number  E-70748

FILED
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

AUG 1 6 2006

BY _Clarice B. Dalton_
                              DEPUTY

RECEIVED
AUG 1 6 2006
Central/VG
Superior Court
County of San Bernardino
Rancho Cucamonga District

CALIFORNIA SUPERIOR COURT

COUNTY OF SAN BERNARDINO
                    (Court)
DESERT DISTRICT

MICHAEL SIMMONS
Petitioner
          vs.
B. CURRY, Warden (A), et al.
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. SWHSS 8914
(To be supplied by the Clerk of the Court)

REIMBURSABLE

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

- [ ] A conviction
- [XXX] Parole
- [ ] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [XXX] Other (specify): __BPH violates petitioner's due process rights in failing to set a parole date.__

1. Your name: Michael Simmons

2. Where are you incarcerated? Correctional Training Facility - East Dorm

3. Why are you in custody?  [XX] Criminal Conviction  [ ] Civil Commitment

   Answer subdivisions a. through i. to the best of your ability.

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Second Degree Murder.

   b. Penal or other code sections: 187

   c. Name and location of sentencing or committing court: Superior Court of California, County of San Bernardino, Desert District.

   d. Case number: VCR 4656

   e. Date convicted or committed: June 29, 1990

   f. Date sentenced: September 17, 1990

   g. Length of sentence: 17 to life.

   h. When do you expect to be released? Unknown

   i. Were you represented by counsel in the trial court? [XX] Yes  [ ] No. If yes, state the attorney's name and address:
      P. Morris, address unknown to me at this time.

4. What was the LAST plea you entered? (check one)

   [XX] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: ____

5. If you pleaded not guilty, what kind of trial did you have?

   [XX] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

GROUND ONE:

Decision that petitioner is unsuitable for parole is not proper where the "record" is void of "evidence" to support a finding that petitioner currently poses an unreasonable threat to "Public Safety".

Petitioner challenges the Board of Parole Hearings (hereafter Board) denial of parole at his fifth (5th) subsequent parole consideration hearing held April 5, 2006 (hearing transcripts attached as Ex A).

Specifically petitioner asserts the Board made no finding that his crime past the caution test set forth in In re Dannenberg, 23 Cal.Rptr.3d 417, 440; "sole reliance on the commitment offense might, in particular cases, violate section 3041 (a)'s provision that a parole date "shall normally be set" under "uniform term" principles, and might thus also contravene the inmate's constitutionally protected expectation of parole. We explained that such a violation could occur, "for example[.] where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." (In re Rosenkrantz, 29 Cal.4th 616, 683, quoting Ramirez, 94 Cal.App.4th 549, 570, the California Supreme Court suggested that, in order to prevent the parole authority's case-by-case suitability determinations from swallowing the rule that parole should "normally" be granted, an offense must be "particularly egregious" to justify denial of parole.

The Board denied petitioner's parole stating: "The panel has reviewed all the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. And specifically that is that the motive was inexplicable in relation to the offense. This was a tumultuous relationship.

3

The combination of guns and drugs, proved fatal to the victim. (Ex A at 54).

The Board also found: petitioner failed to profit from society's previous attempts to correct criminality for having a loaded firearm (Id. at 55). This finding is not support by "any evidence". Petitioner was convicted of 12031 (A) **misdemeanor** for carrying a loaded firearm in public place. Petitioner was **not** a felon at the time of the current offense, petitioner was **not** violating any law, regarding him possessing a firearm. Thus, "no evidence" supports a finding petitioner failed to profit from adult probation.

The Board's finding that: "the commitment offense was senseless, irregardless of which telling of the how it happened is accurate. It was unnecessary to have happened at all. And that's simply, in my opinion, going to take some time."

This finding does **not** support "some evidence" for denial of a parole date. Petitioner is unaware of any case law that says: "you have not done enough time, so come back later. Penal Code mandates the Board to set a date to time uniform to similar gravity offenses.

Petitioner ask the court to take judicial notice that the panel did not find the crime to be especially heinous, atrocious or cruel manner the unsuitability factors listed in California Code of Regs. title 15 section 2402.

The only unsuitability factor used against petitioner Id. subsection (E) the motive for the crime is inexplicable or very trivial in relation to the offense. Whether this can be the sole basis for denial was not answered in Shaputis. Yet, this reason does not seem to prevail under Dannenberg.

PETITIONER'S OFFENSE

Summary taken from the San Bernardino Probation Department Report attached Ex B.

4

Petitioner and Ms. Mills (the victim) lived together for six years, during that time Ms. Mills was known to have a temper and they were constantly involved in arguments of which Ms. Mills mother understood her daughter's temper, and allowed petitioner a place to stay while her daughter cooled.

On May 28, 1989, Sgt. Gundersen responded to shots being fired, finding petitioner and Mr. Cothren highly upset, and petitioner spontaneously told Sgt. Gunderson "I shot her" "She's lying in the garage". Sgt. Gundersen investigation revealed that petitioner and Ms. Mills had been in a constant argument since the night before. At some point Mr. Cothren was summoned to separate the two, Ms. Mills hit Mr. Cothren. Ms. Mills then took off for the garage. Petitioner, hearing Ms. Mills trashing the garage, remembered he had a loaded gun in one of drawers in the garage, worried Ms. Mills would find it, he ran into the garage to recover and unload the gun.

Ms. Mills being upset with petitioner, attempted to assault petitioner, petitioner attempted to block the blow from Ms. Mill and the gun fired.

Petitioner was convicted by a jury of second degree murder.

The California Court of Appeal's - Fourth Appellate District, granted a habeas petition for parole finding the following not "some evidence" to support the denial of parole in the case of In re Shaputis, 2005 DJDAR 14892, 37 Cal.Rptr.2d 324. The facts in Shaputis case were: "Shaputis and Irma had been married for 23 years and their relationship was marked by domestic violence. Two years earlier, Irma complained that Shaputis had beaten her and cracked her ribs, and approximately 18 months earlier Shaputis had shot at his wife when they had been drinking and arguing. Shaputis apparently beat Irma at least two or three times per year and had threatened her with a knife." "On the night of the murder, Shaputis called 9-1-1 around 10:00 P.M. and stated he had fought with his wife and killed her, but claimed it was an

4(a)

accident." "The shot had been fired from close range, possibly as close as two feet, and had entered the neck between the junction of the neck and jaw. Death was apparently instantaneous. Shaputis was a heavy drinker who became violent when intoxicated, and he had been drinking on the night of the murder."

The court concluded there was "no evidence" this type of murder showed conduct beyond the minimum necessary required for a conviction for second degree murder. Concluding that denial of parole because of the offense was arbitrary and capricious.

In contrast to Shaputis, Ms. Mills was the violent one, Ms. Mills attacked Mr. Cothren, Ms. Mills was angry, Ms. Mills was throwing things around in the garage, petitioner, trying to retrieve and unload the gun that was in a drawer in the garage, shot Ms. Mills while trying to block a blow directed at him by Ms. Mills. Thus, "no evidence" compared to Shaputis supports denial of parole.

The factor statutorily required to be considered, and the overarching consideration, is "Public Safety". In re Scott, 133 Cal.App.4th 573, making the Scott, decision the current legal means to guide us through the haze of Board decisions. The commitment offense can negate suitability only if circumstances of the crime "reliably" established by "evidence" in the "record" rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. Thus, "denial" of release solely on the basis of the gravity of the commitment offense "warrants" especially close scrutiny.

PETITIONERS REHABILITATION

The Board did "note" petitioner's exemplary behavior (Ex A at 55) and

4(b)

commended him for his variety of programs (Id. at 56) apparently finding petitioner has been rehabilitated.

## PSYCHIATRIC EVALUATION

The Board found the psych report written by Dr. Howlin favorable (Id. at 55).

## PETITIONER'S SOCIAL RELATIONSHIPS

The victim's mother testified in person to the Board (Ex A at 50-51) in support of parole for petitioner. Her testimony shows evidence of stable social history. Further, petitioner has close personal family ties with his children, one of which testified at the hearing (Id. 51-53). Petitioner's son Michael explained to the members how he and his Dad get along, how he misses him, how he needs him, (a reading which should bring tears to a soft heart) asking the board to please send his Dad home. Thus, proving petitioner has strong stable social history and strong family support.

## SUBSTANCE ABUSE

Petitioner admits former drug use. When there is "some evidence" of past substance abuse, the test is what "evidence" of substance abuse after the offense itself. Current Law holds: Reliance on conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. But, where inmate over time continues to demonstrate exemplary behavior and evidence of rehabilitation, denying him parole date simply because of the nature of prior conduct would raise serious questions involving his liberty in parole; Shaputis supra; In re Smith, 114 Cal.App.4th 372; Biggs, v. Terhune, 334 F.3d 916; Irons v. Warden, 358 F.Supp.2d. 947 - fn.2.

There is "no evidence" in petitioners case of any substance abuse for years since his prison incarceration, nor was this a factor used by the Board.

4(c)

THEREFORE: All evidence presented to the Board supported suitability for the setting of a parole date. "No evidence" was presented to find petitioner poses a current risk to public safety. No finding was made that the gravity of the commitment offense would justify a finding of unsuitability, nor would the instant offense compared with <u>Shaputis</u> support such a denial as held by the California Court of Appeals, Fourth Appellate District's finding which is binding on this court.

Thus requiring this petition for writ of habeas corpus to be granted.

///

///

///

GROUND TWO:

The Board failed to consider CDCR'S assessment that petitioner's commitment offense was "Not Unusually Violent" by taking an opposite and inconsistent position that the offense was "Particularly Egregious" in relation to "Public Safety" such an act violates petitioner's right to Due Process during the hearing under both STATE and FEDERAL LAW.

Petitioner's commitment offense was analyzed by CDCR **many years** prior to his first parole consideration hearing. The CDCR classification panel's goal in assessing petitioner's crime is his risk to "Public Safety" (same as the Board's) prior to placement in a level II prison. This placement constitutes "some evidence" that CDCR found the gravity of petitioner's commitment offense to be "not unusually violent".

Petitioner is housed at Correctional Training Facility II (CTF II) East Dormitory a Level I-II housing unit, designed for non-violent, programming, working individuals, (petitioner is working in PIA furniture factory) such inmate's are considered "low risk" and "non-violent" <u>Johnson v. California</u>, 321 F.3d 791, 795, as testified to by prison administrators.

California Code of Regulations (CCR) § 3375 (b), mandates "Public Safety" be considered during classification hearings. Common sense, those inmates, who commit "particularly egregious" acts threaten "Public Safety". Each following year, the inmate is re-assessed for accurate facility placement (CCR) § 3376 (c)(2)(A). The Departmental Review Board (DBR), acting on behave of the Director of Corrections, conducts final review (CCR) § 3376.1 (d)(3) to ensure placement of the inmate in a Level II prison does **not** pose a "threat" to "Public Safety".

Regulations mandate that "Inmates" serving a "Life" term CANNOT be housed in a "Level I or II" facility (CCR § 3375.2 (a)(7)) if ANY of the following

4(e)

case factors apply. **Multiple Murders:** The killing of more than one victim. **Unusual Violence:** Torture or the victim endured great pain & suffering. **Execution-Type Murder:** Victim was bound, cuffed, gagged, blindfolded or forced to assume a position they could not resist of flee and shot at close range. **High Notoriety:** The inmate would cause a unusual risk of public panic if he escaped; the public panic is based upon the **nature** or **circumstance** of the **Inmate's Crime, criminal history, behavior in custody.** Definitions taken from CCR § 3000 under same name.

CDCR found "no evidence" of the above factors present in petitioner's commitment offense. Due process requires the Corrections Classification Decisions be supported by "some evidence" In re Wilson 202 Cal.App.3.d 661, 666-7; Superintendent v. Hill, 472 U.S. 445, standard used for Board findings.

The Board cannot be allowed to reclassify petitioner's crime in order to justify the use of the words "especially heinous, atrocious or cruel manner" when they use the same case factors i.e. "Multiple Victims" "Execution-Style Murder" "Victim Abused-Defiled-Mutilated" or "An exceptionally callous disregard for human suffering." (CCR) § 2403, in evaluating the gravity of the commitment offense as does CDCR.

The goal of CDCR is to rehabilitate the offender while protecting the "Public" the goal of the Board is to set parole dates, PC 3041(a). Both are administrative proceedings which are Quasi-Judicial Cazajkowski v. City of Chicago, Ill., 810 F.Supp. 1428. Both determine factors of a commitment offense to see if the offense is especially heinous, atrocious, or cruel, i.e. "Unusually Violent" or "Particularly Egregious".

Clearly the Board should be "Judicial Estopped" from taking a contrary position than their governing body. The California Supreme Court found the Board is an arm of the CDCR In re Dannenberg, 23 Cal.Rptr.3d. 440. When CDCR

4(f)

found "no evidence" the offense was "particularly egregious" by finding no "unusual violence" the Board's denial of parole fails In re Dannenberg, 23 Cal.Rptr.3d. 417; In re Rosenkrantz, 29 Cal.4th 616.

Doctrine of Judicial Estoppel, is a preclusion of inconsistent positions, is invoked to prevent parties from changing its position when the change has adverse impact on judicial process. See Yniquez v. State of Ariz., 939 F.2d 727; Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597; Cal-Almond, Inc. v. Department of Agriculture, 67 F.3d. 874, cert. denied 519 U.S. 819; Data General Corp. v. Johnson, 78 F.3d. 1556; Kennedy v. Applause, Inc., 90 F.3d 1477; U.S. v. Garcia, 37 F.3d. 1359, cert. denied 514 U.S. 1067; Morris v. State of Cal., 966 F.2d. 448 cert. denied Cal. v. Morris, 506 U.S. 831.

When a governing body takes a certain position in assessing punishment for an offense, Double Jeopardy Clause of the U.S. Const. attaches, and estoppel applies Ashe v. Swenson, 397 U.S. 436. The 5th amend. is applicable to the state through the 14th amend. Chambers v. Florida, 309 U.S. 227.

Petitioner has a right to believe the finding that his commitment offense was **not** "Unusually Violent" prevents the offense to be later elevated to one of "Particularly Egregious" this government activity violates petitioners protected right to be judge fairly Hampton v. U.S., 425 U.S. 484. Expost Facto is violated when PC 3041(b) is used to "aggravate" or find petitioner's crime more grave, "greater than" it was when committed, as found by the CDCR, see Stogner v. California, 2003 DJDAR 6989.

Clearly the Board is taking a opposite position than the CDCR; motive excuse to deny parole, estoppel is the only means to prevent the Board from taking a contrary position of the commitment offense which CDCR decided, Benton v. Maryland, 395 U.S. 784; Harris v. Oklahoma, 433 U.S. 682.

Fundamental fairness requires governing bodies to abide by their decision

with respect to Federal Law, State Law, State Regulations. When petitioner presents himself in front of the Board he believes the gravity of his commitment offense under PC 3041(b), (being used unconstitutionally under <u>Stogner</u> supra) has been settled. He prepared himself for parole through rehabilitation. He finds no precedent that requires his to mount a defense to different findings of the gravity of his offense.

Facts are clear, the Board is denying petitioner parole based on the gravity of his commitment offense, which CDCR determined to be not "particularly egregious" the Board has never objected to this finding, therefore estoppel is justified.

///
///
///

GROUND THREE:

Petitioner's due process rights under the 5th & 14th Amend. of the US Const. were violated at petitioner's April 5, 2006, fifth (5th) subsequent parole consideration hearing (EX A) by the Board's continued use of unchanging factors.

The Board decision to deny parole was based solely on the commitment offense (Ex A pg 54-57 ) a factor that will **never** change. Petitioner has had (5) hearings and at each the commitment offense was used (which will never change) to deny parole in violation of petitioner protected liberty interest for parole.

The mandatory language in California Penal Code (PC) 3041, imposes a obligation to grant parole when certain conditions have been met, thus creating a legally binding protected liberty interest in parole, a presumption that parole release will be granted; McQuillon v. Duncan, 306 F.3d. 901-2; Biggs v. Terhume, 334 F.3d. 914; Irons v. Warden, 358 F.Supp.2d. 936. The evidence, found by the Board itself, shows petitioner has met all conditions of rehabilitation espoused by the prison system (EX A).

In Biggs, the court said the Board was "initially justified" in denying parole based on the commitment offense or criminal history. The court warned that continued use of those factors at subsequent parole hearings would "run contrary to the rehabilitative goals espoused by the prison system" resulting in a constitutional due process violation. Also denials in face of exemplary behavior and overwhelming evidence of rehabilitation violates an inmate's liberty interest in parole.

The US Supreme Court found: "the behavior record of an inmate during confinement is critical in determining the degree the inmate is prepared to adjust to parole release" Greenholtz v. Inmates of Nebraska, 442 U.S. 15.

4(i)

In <u>Irons</u>, the court found: In assessing any due process violation is the fact that continued reliance on unchanging circumstances transforms an offense for which California Law provides eligibility for parole into a de facto life imprisonment without parole.

The case Law of <u>McQuillon</u>, <u>Biggs</u>, <u>Irons</u>, and <u>Greenholtz</u> hold that states can (and California did) create an enforceable liberty interest in parole through their "unique structure and language" in the parole statue PC 3041.

Petitioner has been denied parole at (5) hearings, petitioner is challenging the denial at his latest hearing (Ex A), based on the gravity of the commitment offense, this denial of parole at his subsequent parole hearing on the unchanging factor of the offense is unconstitutional requiring petitioner to be released on parole.

///
///
///

4(j)

8. Did you appeal from the conviction, sentence, or commitment? [XXX] Yes. [ ] No. If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
      California Court of Appeal - Fourth District
   b. Result: Denied                                          c. Date of decision: April 16, 1992
   d. Case number or citation of opinion, if known: E008614
   e. Issues raised: (1) admitting evidence of presence of other weapons
                    (2) Instructional error.
                    (3) _____
   f. Were you represented by counsel on appeal? [XX] Yes. [ ] No. If yes, state the attorney's name and address, if known:
      Robert E. Boyce and Tamare L. Cross   addresses unknow to me.

9. Did you seek review in the California Supreme Court? [XX] Yes. [ ] No. If yes, give the following information:
   a. Result: Denied                                          b. Date of decision: unknown
   c. Case number or citation of opinion, if known: unknown
   d. Issues raised: (1) Same as above - I think.
                    (2) _____
                    (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
    Issue not ripe during appeal process.

11. Administrative Review:
    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:
       Board of Parole Hearings has no Administrative Review process.

    b. Did you seek the highest level of administrative review available? [XX] Yes. [ ] No.
       Attach documents that show you have exhausted your administrative remedies.

MC-275 [Rev. January 1, 1999]                    PETITION FOR WRIT OF HABEAS CORPUS                    Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

   (2) Nature of proceeding (for example, "habeas corpus petition"): _____

   (3) Issues raised: (a) _____

       (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   b. (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

       (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
    N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
    No delay, Board decision became final on August 3, 2006

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
    No lower court available.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 8-3-06

*(signed)* Michael A. Simmond
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**    Page six of six