FILED

AUG 6 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ANTHONY SIMMONS,  )
                         )
        Petitioner,      )     No. C 07-4537 CRB (PR)
                         )
    v.                   )     ORDER DENYING PETITION
                         )     FOR A WRIT OF HABEAS
BEN CURRY, Warden,       )     CORPUS
                         )
        Respondent.      )
_____)

Petitioner, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, has a filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' (BPH) April 5, 2006 decision to deny him parole. For the following reasons, the petition is denied.

## BACKGROUND

The following summary of the facts underlying petitioner's conviction is taken from the California Court of Appeal's opinion on direct appeal:

> The events which led to the death of Corrina Mills consumed Friday and Saturday, culminating in the fatal shot Sunday morning. Defendant, the live-in boyfriend of the victim for a period of seven years, was a carpenter. His car was broken so he could not go to work on the Friday preceding the homicide. With the help of a

neighbor, Chris Cothren, defendant began working on his car in order to get it running to get to work on Monday. The victim was angry that defendant was unable to go to work. Defendant worked on the car all Friday night. On Saturday, the car still not working, defendant continued to attempt to repair the car with Cothren's help. On several different occasions, the victim came out and yelled at the defendant for not spending enough time with her and the children. The next morning, Cothren saw defendant and asked him if he was ready to work on the car. Defendant indicated that he wasn't ready, "She's still pissed." Cothren also observed that when Corrina got mad, no one could slow her down, that she had a bad temper.

Later that morning, the children came over to Cothren's residence and told him that their parents needed him. When he arrived he found Corrina in an agitated state on the floor. When he tried to help her, she hit him. Corrina was angry and upset and was throwing things. She went into the garage and called for defendant. Cothren followed but retreated after the victim threw something in his direction. Cothren then heard a loud bang. When he went into the garage, he found the victim on the floor and defendant standing with a gun to his head. He kicked the weapon from defendant's hand. Immediate before the shooting, a 14-year-old babysitter across the street heard a man's voice yell he was "going to kill the fucking bitch." She heard a gunshot about 30 seconds later. After the gunshot, the witness observed the defendant running around the front of the duplex yelling, "I killed her. She's dead."

Sergeant Gundersen of the Adelanto Police responded to the 911 call. He recovered the murder weapon, a .44-caliber Magnum revolver which was fully loaded except for one spent cartridge. A search of the interior of the home produced a loaded .12-gauge shotgun, an unloaded AR-15 rifle and a loaded .30-.30 caliber rifle. An autopsy was performed on the victim and it was determined that the cause of death was gunshot wound to the face which passed through the victim's brain on an almost straight-line trajectory. The weapon was fired from a distance of between four to eight inches from the victim's face. A weapons expert testified that the .44-caliber Magnum was a single-action revolver. Single-action weapons must first be cocked before firing. The weapon has four hammer position, the third position is the loading position, the fourth is the firing position. The weapon cannot be fired from the hammer-loading position nor can it be loaded from the hammer-firing position.

Resp't Ex. 3 at 2-4 (footnotes omitted).

On June 29, 1990, petitioner was convicted by a jury in San Bernardino County Superior Court of second degree murder with use of a firearm and was sentenced to seventeen years to life in state prison.

2

The BPH denied petitioner parole following hearings on June 25, 2001, June 25, 2002, September 23, 2003 and September 21, 2004. On April 5, 2006, the BPH again denied petitioner parole, concluding that petitioner was unsuitable for parole because he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison at that time.

Petitioner challenged the BPH's decision in San Bernardino County Superior Court, but the court denied his petition for a writ of habeas in a reasoned decision on November 22, 2006. The California Court of Appeal summarily denied a subsequent petition on January 23, 2007, and the Supreme Court of California denied review on April 18, 2007.

Petitioner filed this federal petition for a writ of habeas corpus on August 31, 2007. The court found that the petition, when liberally construed, appeared to state a cognizable claim under 28 U.S.C. § 2254 and ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and petitioner has filed a traverse.

## DISCUSSION

A. <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority"

for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Id.*

B.   Analysis

Petitioner claims that the BPH violated his right to due process by concluding that he was unsuitable for parole. Petitioner contends that there was no evidence supporting the conclusion that he posed an unreasonable risk of danger to society or a threat to public safety.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during, and after the crime. *See* Cal. Code Regs. tit. 15, § 2402(b)-(d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. *Sass v. Cal. Bd. of Prison Term*, 461 F.3d 1123, 1128 (9th Cir. 2006); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has not been set for the inmate because "[t]he liberty interest in created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003).

5

A parole board's determination of parole suitability satisfies the requirements of due process if "some evidence" supports that decision. *Sass*, 461 F.3d at 1128-29 (adopting the "some evidence" standard developed for disciplinary hearings in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)). "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the . . . board.'" *Id.* at 1128 (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457). The some evidence standard of *Hill* is clearly established law in the parole context for the purposes of § 2254(d). *Id.* at 1129.

When assessing in a federal habeas case whether a state parole board's unsuitability determination was supported by "some evidence," the analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. *See Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007); *Biggs v. Terhune*, 334 F.3d at 915. In California, the pertinent state statutes and regulations require that a parole unsuitability determination be supported by some evidence of the prisoner's dangerousness at the time of the hearing. *See In re Lawrence*, 44 Cal. 4th 1181, 1191 (2008) ("the standard of review properly is characterized as whether 'some evidence' supports the conclusion that the inmate is unsuitable for parole because he or she currently is dangerous").

After the April 5, 2006 hearing, the BPH concluded that petitioner was unsuitable for parole because he "would pose an unreasonable risk of danger to

society or a threat to public safety if released from prison." Resp't Ex. 4 at 54. In support, the BPH noted that the motive of petitioner's crime "was inexplicable in relation to the offense" and that "the commitment offense was senseless, irregardless of which telling of the how it happened is accurate." *Id.* at 54, 56. It also noted that petitioner had "failed to profit from society's previous attempts to correct [his] criminality in that [he was] previously on adult probation for having a loaded firearm." *Id.* at 55.

The BPH noted that petitioner's record while in custody had been "exemplary." *Id.* It specifically mentioned the favorable psychiatric report petitioner received in 2003 and his good plans for a place to live and employment upon parole. *Id.* The BPH also commended petitioner for his five training certificate chronos, the completion of his GED, and his involvement in PIA wood products, the Correctional Network Postcards, anger management programs, stress management programs, NA, and a meditation program with the Buddhist chaplain. *Id.* at 56. But the BPH concluded that although petitioner was moving closer to parole suitability through his programming, the senselessness and inexplicability of the crime outweighed his progress at this time. *Id.* at 56-57. As one of the panel members put it, a finding of parole suitability is "going to take some time." *Id.* at 57.

The state superior court upheld the decision of the BPH, and the state appellate and supreme courts summarily affirmed. The superior court found that "there was more than some evidence to support the denial of suitability for parole on the basis of the conduct of the Petitioner in the commission of the crime." Resp't Ex. 6 at 3. The court explained that the BPH based its decision on the inexplicable motive for the crime and on petitioner's failure to benefit from society's previous attempt to correct his criminality through probation, and that

7

this evidence alone was sufficient to support the BPH's determination that petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. *Id.* at 2-3.

      The superior court's rejection of petitioner's due process claim was not contrary to, or an unreasonable application of the *Hill* "some evidence" standard, nor was it based upon an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The inquiry under *Hill* is simply "whether there is <u>any</u> evidence in the record that could support the conclusion reached by the [BPH]." *Hill*, 474 U.S. at 455-56 (emphasis added). In this case, there is. Petitioner shot his live-in girlfriend of seven years, the mother of his children, directly in her face at very close range after properly cocking this gun. The motive behind this callous act – an argument – was genuinely inexplicable in relation to the crime, and leaves open the prospect that petitioner might act in such a violent manner in a future stressful situation. In addition, petitioner's failure to benefit from prior attempts to correct his criminal conduct through probation creates doubt as to his ability to avoid criminal conduct if released on parole. This evidence – relied upon by the BPH and the superior court – tends to show unsuitability under pertinent state statutes and regulations, *see* Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability), and constitutes "some evidence" of dangerousness under *Hill*, *see Hill*, 474 U.S. at 455-56; *see also In re Lawrence*, 44 Cal. 4th at 1191 (California's statutes and regulations require that BPH's parole unsuitability determination be supported by some evidence of prisoner's dangerousness at time of hearing). The superior court did not unreasonably conclude that petitioner's trivial motive for the vicious killing and failure to benefit from previous attempt to correct his criminality constituted sufficient evidence for the BPH to find

petitioner unsuitable for parole. *Cf. Ewing v. California*, 538 U.S. 11, 26 (2003) (recidivism concerns are genuine and have long been recognized as legitimate grounds for penological decisions). It is not up to this court to "reweigh the evidence." *Powell v. Gomez*, 33 F.3d 39, 42 (9th Cir. 1994).

Petitioner claims that his commitment offense and pre-commitment conduct are unchanging factors that cannot justify the BPH's unsuitability decision. Not so. The Ninth Circuit has observed that a parole board's continued reliance on an unchanging factor to deny parole "runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 916-17. But this does not mean that a parole board is always precluded from relying on unchanging factors such as the circumstances of the commitment offense or the prisoner's pre-commitment behavior in determining parole suitability. *Sass*, 461 F.3d at 1129 (commitment offenses in combination with prior offenses provided evidence to support denial of parole). The Ninth Circuit has consistently upheld the denial of parole based solely on the circumstances of the commitment offense and/or pre-commitment conduct where prisoners have not yet served the minimum number of years required by their sentence. *See Irons*, 505 F.3d at 853-54 (citing cases). Petitioner's unchanging-factor claim fails because the BPH's April 5, 2006 denial of parole took place before petitioner's minimum term of seventeen years expired. *See id.*

/

/

/

/

/

## CONCLUSION

After a careful review of the record and pertinent law, the court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of respondent, terminate all pending motions (*see* doc. #9) as moot, and close the file.

SO ORDERED.

DATED: **AUG  6 2009**

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.07\Simmons, A2.merits.wpd

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL A SIMMONS,

    Plaintiff,

v.

BEN CURREY et al,

    Defendant.
_____/

Case Number: CV07-04537 CRB

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 6, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Michael Anthony Simmons E-70748
ED 147 Low
P.O. Box 689
Soledad, CA 93960-0689

Dated: August 6, 2009

Richard W. Wieking, Clerk
By: Lashanda Scott, Deputy Clerk